# Illinois Official Reports

## Appellate Court

---

### *In re Ashli T.*, 2014 IL App (1st) 132504

---

| | |
|---|---|
| Appellate Court Caption | *In re* ASHLI T., a Minor, Respondent-Appellant (The People of the State of Illinois, Petitioner-Appellant, v. Tonesha M. and Scott T., Respondents-Appellees). |
| District & No. | First District, Second Division<br>Docket Nos. 1-13-2504, 1-13-2507 cons. |
| Filed | January 21, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from orders of the trial court granting sole legal custody of respondent to her father, dismissing the State's petition for adjudication of wardship and closing the proceedings, the dismissal of the petition for adjudication of wardship was vacated and the cause was remanded for further proceedings consistent with the Juvenile Court Act, since the trial court had no authority to grant permanent custody without conducting adjudicatory and dispositional hearings and the finding that dismissal of the petition for adjudication of wardship was in respondent's best interest was clearly erroneous. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-JA-462; the Hon. Robert Balanoff, Judge, presiding. |
| Judgment | Order vacated; cause remanded. |

Counsel on
Appeal

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Nancy Kisicki, Assistant State's Attorneys, of counsel), for the People.

Abishi C. Cunningham, Jr., Public Defender, of Chicago (Evelyn G. Baniewicz, Assistant Public Defender, of counsel), for appellee Scott T.

Robert F. Harris, Public Guardian, of Chicago (Kass A. Plain and Christopher J. Williams, of counsel), guardian *ad litem*.

Panel

JUSTICE SIMON delivered the judgment of the court, with opinion. Presiding Justice Harris and Justice Pierce concurred in the judgment and opinion.

## OPINION

¶ 1    Ashli T., through the office of the public guardian, and the State appeal from orders of the circuit court of Cook County granting sole legal and physical custody of Ashli to her father, Scott T., and dismissing the petition for adjudication of wardship filed as to Ashli by the State. On appeal, the public guardian and the State contend that the court did not have authority to grant permanent custody of Ashli to Scott without conducting adjudicatory and dispositional hearings and that the court's finding that dismissal of the petition for adjudication of wardship was in Ashli's best interest is clearly erroneous. For the reasons that follow, we vacate the order dismissing the petition for adjudication of wardship and closing the proceedings and remand the matter to the circuit court for further proceedings consistent with the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-1 *et seq.* (West 2012)).

¶ 2                                    BACKGROUND

¶ 3    On May 20, 2013, the State filed a petition for adjudication of wardship as to Ashli, who was born on March 29, 2013, and is the daughter of Tonesha M. and Scott. The State alleged that Ashli was abused and neglected and that her environment was injurious to her welfare. The State asserted that Ashli faced a substantial risk of physical injury because Tonesha had three other children in the custody of the Illinois Department of Children and Family Services (DCFS) based on findings of abuse and/or neglect and had not completed recommended services and paternity had not yet been established. The State also filed a motion for temporary

- 2 -

custody, asserting that there was probable cause to believe that Ashli was neglected and that there was an immediate and urgent necessity that she be taken into custody.

¶ 4 That same day, the circuit court conducted a hearing on the petition and motion. Scott testified that he believed he was Ashli's father and requested a paternity test. Edwine Reese, an investigator for DCFS, testified that Tonesha had three children prior to Ashli and that none of those children were in her care and custody. Reports had been filed against Tonesha regarding her eldest daughter in 2008 for cuts, welts, and bruises and in 2009 for cuts, welts, bruises, and sexual penetration. Tonesha was convicted of criminal assault of her eldest daughter, served 3½ years of a 7-year sentence, and was currently on parole. Tonesha had been found to be in need of anger management, substance abuse, and parenting services, as well as a psychological assessment and counseling, but she only completed some of the necessary services while incarcerated and was no longer participating in any of those services. Reese recommended temporary custody for Ashli because Scott's paternity had not yet been established and there was a risk of harm to Ashli if she was returned to Tonesha's custody and care.

¶ 5 Following the hearing, the court entered an order granting temporary custody of Ashli to DCFS, finding probable cause to believe that Ashli was abused and neglected and that an urgent and immediate necessity to remove Ashli from Tonesha's custody existed due to Tonesha's prior acts of abuse and failure to complete required services. The court also ordered a paternity test for Scott and supervised visits with Ashli for Scott and Tonesha.

¶ 6 On July 3, 2012, Scott filed a motion requesting an order finding that he was Ashli's biological father, vacating the temporary custody order, finding that he was willing and able to care for Ashli, and returning Ashli to his care, custody, and control. Scott asserted that it was in Ashli's best interest to be placed in his care and custody because he did not present any causes for concern as to Ashli's safety, his home was safe and appropriate, he was willing and able to obey all reasonable terms and conditions attached to a protection order, he was willing to participate in any and all services recommended by DCFS, he was employed and earned a sufficient income to meet Ashli's needs, he had formed a care plan with various family members to provide care to Ashli while he was at work, and he had successfully parented other children.

¶ 7 On July 10, 2013, the court conducted a hearing on Scott's motion to vacate the temporary custody order. The State presented the results of a paternity test, which identified Scott as Ashli's biological father, and Danika Williams, a case manager at Lutheran Child and Family Services, testified that she had conducted an assessment of Scott and determined that it was in Ashli's best interests to be placed in his custody for the reasons set forth in his motion. During Williams' testimony, the court asked Scott's attorney if Scott was asking the court to "close the case," and counsel responded that Scott was not. At the conclusion of the hearing, the court found that it was in Ashli's best interest to be placed in Scott's custody and that there was no immediate and urgent necessity to remove Ashli from his custody. The court also stated that it wanted to close the case that day, that it was going to conduct some research to determine whether it could do so, and that it would reconvene with the parties later that day.

¶ 8 When the parties reconvened, Scott's attorney stated that he was not asking for dismissal of the petition for adjudication of wardship, but was asking for a finding that Scott was willing

- 3 -

and able to care for Ashli and that matters "then proceed in an expedited fashion through adjudication and disposition." The court stated that it thought it was in Ashli's best interest to dismiss the petition, that it was required by supreme court precedent to conduct a hearing as to whether doing so was in Ashli's best interest prior to dismissing the petition, and that it was *sua sponte* ordering that a "best interests hearing" be conducted immediately. The court explained that it wanted to proceed in this fashion because it was preferable to limit a family's interaction with the juvenile court system as much as possible. At this point, Scott's attorney stated that Scott was now seeking to have the case closed that day.

¶ 9 Williams testified at the hearing that she believed it was in the best interests of Ashli, Scott, and the community to close the case and place Ashli in Scott's custody that day. Tonesha testified that although Scott knew of her pregnancy and Ashli's birth, he did not become involved in Ashli's life until the petition for adjudication of wardship had been filed, and that she intended to pursue her rights as to Ashli in domestic relations court. Following the hearing, the court stated that it was in Ashli's best interest to dismiss the petition for adjudication of wardship and place her in Scott's custody, that it was going to amend the temporary custody order to reflect that there was no immediate or urgent necessity to place Ashli in the custody of DCFS, and that it was going to place Ashli in Scott's custody and dismiss the petition.

¶ 10 The court entered various written orders on July 10, 2013. The court entered an order finding that Scott was Ashli's biological father. The court also entered an order granting Scott custody of Ashli, finding there was no immediate and urgent necessity to remove Ashli from Scott's care, stating that "the probable cause finding that the court entered on May 20, 2013 stands," and stating that the court would find an urgent and immediate necessity to remove Ashli from Tonesha's care if Ashli was in her care. In addition, the court entered an order closing the proceedings, finding that the family was not in need of further monitoring by the court and that it was in Ashli's best interest to close the case and ordering that the petition for adjudication of wardship was dismissed and that Scott was granted legal custody of Ashli. On July 11, 2013, the court amended its order to specify that it was granting "sole legal and physical custody" of Ashli to Scott.

¶ 11 ANALYSIS

¶ 12 The Juvenile Court Act sets forth the process by which a court will decide whether a child should be removed from his or her parents and made a ward of the court. *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004). The State may initiate proceedings by filing a petition alleging that the minor is abused or neglected and that it is in the minor's best interest to be adjudged a ward of the court. 705 ILCS 405/2-13 (West 2012). Upon the filing of a petition, the court shall conduct a temporary custody hearing to determine who will be granted temporary custody of the minor until further hearings are conducted as to whether the minor should be adjudged a ward of the court and placed in the permanent custody of someone other than the minor's parents. 705 ILCS 405/2-10 (West 2012); *In re A.H.*, 195 Ill. 2d 408, 417 (2001). These additional hearings consist of an "adjudicatory hearing," a "dispositional hearing," and a "permanency hearing." *A.H.*, 195 Ill. 2d at 417.

¶ 13   At the temporary custody hearing, the court must first make a threshold determination as to whether there is probable cause to believe that the minor is abused or neglected. *Id.* If the court finds there is probable cause to believe that the minor is abused or neglected, then it must conduct a hearing at which all relevant parties shall testify. 705 ILCS 405/2-10(2) (West 2012). Following a hearing, the court may release the minor into the custody of a parent, guardian, or custodian; release the minor pursuant to a protection order; or prescribe shelter care and order that the minor be kept in a suitable place designated by the court or a shelter care facility. *Id.* To prescribe shelter care, the court must find that doing so is "a matter of immediate and urgent necessity for the safety and protection of the minor" and that reasonable efforts have been made or cannot be made to prevent or eliminate the necessity of the minor's removal from his or her home. *Id.* Once a temporary custody order has been entered, any party may file a motion to modify or vacate that order. 705 ILCS 405/2-10(9) (West 2012).

¶ 14   At an adjudicatory hearing, the court shall determine whether the minor is abused or neglected (705 ILCS 405/2-18 (West 2012)) and, if the court finds that the minor is abused or neglected, it shall conduct a dispositional hearing pursuant to section 2-22 of the Juvenile Court Act (705 ILCS 405/2-22 (West 2012)) to determine whether to make the minor a ward of the court (705 ILCS 405/2-21(2) (West 2012)). At a dispositional hearing, the court shall determine whether it is in the best interests of the minor and the public to make the minor a ward of the court and, if the minor is made a ward of the court, then the court shall enter a disposition order which serves the health, safety, and interests of the minor and the public. 705 ILCS 405/2-22(1) (West 2012). If the minor is made a ward of the court due to abuse or neglect, the court may enter a disposition order: (1) continuing custody with the minor's parent, guardian, or custodian; (2) placing the minor in legal custody or guardianship; (3) restoring custody to the parent, parents, guardian, or custodian on condition of compliance with an after-care plan; or (4) partially or completely emancipating the minor. 705 ILCS 405/2-23(1)(a) (West 2012). Any disposition order may provide for protective supervision or include an order of protection. 705 ILCS 405/2-23(2) (West 2012).

¶ 15   In this case, the State initiated proceedings by filing a petition for adjudication of wardship and a motion for temporary custody, alleging that there was probable cause to believe that Ashli was abused and neglected because Tonesha previously abused her eldest daughter and had not since completed recommended services and paternity had not yet been established. The court conducted a temporary custody hearing, found there was probable cause to believe that Ashli was abused and neglected and there was an immediate and urgent necessity to remove Ashli from her home, and granted temporary custody of Ashli to DCFS. Scott filed a motion to vacate the temporary custody order, asserting that a paternity test confirmed that he was Ashli's father and that it was in Ashli's best interest to be placed in his custody, and the court conducted a hearing on the motion and found that it was in Ashli's best interest to be placed in Scott's custody. The court then conducted a "best interests hearing" and entered an amended temporary custody order granting "sole legal and physical custody" of Ashli to Scott. The court also entered an order closing the proceedings and dismissing the petition of adjudication of wardship.

¶ 16    The public guardian and the State contend that the court could not grant permanent custody of Ashli to Scott without first conducting adjudicatory and dispositional hearings and that the court's decision that it was in Ashli's best interest to dismiss the petition is clearly erroneous because it was based on the incorrect belief that the court had entered a valid order granting Scott permanent custody of Ashli. Scott responds that the court could grant permanent custody prior to adjudication or disposition and that the court correctly determined that it was in Ashli's best interest to be placed in his custody.

¶ 17    As an initial matter, we must clarify the procedural posture of this case to determine the standard of review which should be applied to the court's decision to close the proceedings and dismiss the petition. The record shows that, after having conducted a hearing on Scott's motion to vacate the temporary custody order, the court stated that it wanted to close the case that day and was going to conduct a "best interests hearing" because it was required to do so prior to closing the case by our supreme court's holding in *In re J.J.*, 142 Ill. 2d 1 (1991). In *J.J.*, the court held that "when the State moves to dismiss a petition alleging abuse of a minor, the circuit court shall consider the merits of the motion and determine, on the record, whether the dismissal is in the best interests of the minor, the minor's family, and the community." *Id.* at 9. The court stated that "both the State's Attorney and the court are charged with the duty of ensuring that, at each step of the wardship adjudication process, the best interests of the minor, the minor's family and the community are served" and that the court "has not only the authority but the duty to determine whether the best interests of the minor will be served by dismissing a petition alleging abuse of a minor." *Id.* at 8-9. Thus, when the court conducted a "best interests hearing" in this case, it was conducting a hearing as to whether to dismiss the petition, and not an adjudicatory or dispositional hearing. The decision to dismiss a petition on the basis of the minor's best interest lies within the discretion of the circuit court. *Id.* at 11. As such, we review the court's decision to dismiss the petition under an abuse of discretion standard. A court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt its view. *In re Marriage of Callahan*, 2013 IL App (1st) 113751, ¶ 27.

¶ 18    Following the "best interests hearing," the court found that it was in Ashli's best interest to close the proceedings, dismiss the petition, and place her in Scott's custody. To that effect, the court entered an amended temporary custody order granting Scott "sole legal and physical custody" of Ashli. However, the purpose of a temporary custody order is to decide who will have custody of the minor until permanent custody is determined. *A.H.*, 195 Ill. 2d at 417. By its very nature, a temporary custody order does not confer permanent custody, but only provides temporary custody in anticipation of an order determining permanent custody to be entered later in the proceedings. Thus, the court did not confer permanent custody of Ashli to Scott in the amended temporary custody order, as the order would not have any legal effect once the proceedings were closed. As the court made clear in its written order and oral statements that it believed that it was in Ashli's best interest to be placed in Scott's permanent custody and removed from Tonesha's custody, the court abused its discretion when it dismissed the petition and closed the proceedings without first placing Ashli in Scott's permanent custody.

¶ 19    Although Scott maintains that the court granted him permanent custody of Ashli, we determine that the record does not support a characterization of the amended temporary custody order as an order granting permanent custody. Following the conclusion of the "best interests hearing," the court stated that it was going to amend the temporary custody order and dismiss the petition and it entered a written order which begins by stating that "the May 20, 2013 temporary custody order is amended as follows." Thus, the court's oral statement and its written order both indicate that the court intended for its order granting custody to Scott to be a temporary, rather than permanent, custody order. To the extent that portion of the written order granting "sole legal and physical custody" of Ashli may indicate that the court intended to enter a permanent order, the court's oral pronouncement that it was entering an amended temporary custody order controls over any conflict created by the written order. *In re K.L.S-P.*, 381 Ill. App. 3d 194, 195 (2008).

¶ 20    In addition, a number of findings in the court's order are made pursuant to the standards to be applied at a temporary custody hearing. At a temporary custody hearing, the court must determine if there is probable cause to believe that the minor is abused or neglected and if there is an immediate and urgent necessity to place the minor in shelter care. 705 ILCS 405/2-10(2) (West 2012). In its amended temporary custody order, the court found that there was no urgent and immediate necessity to remove Ashli from Scott's care and stated that "the probable cause finding that the court entered on May 20, 2013 stands" and that the court would find an urgent and immediate necessity to remove Ashli from Tonesha's care if Ashli was in her care. Thus, the court applied the standards relevant to a temporary custody determination in the amended temporary custody order. Further, the court's order was entered in response to Scott's motion to vacate the temporary custody order and prior to any adjudicatory or dispositional hearings or orders.

¶ 21    Moreover, even if the order granting Scott custody of Ashli could be characterized as a permanent custody order, the court could not enter such an order at this stage in the proceedings. After a minor is placed in temporary custody, the court shall conduct an adjudicatory hearing to determine if the minor is abused or neglected. 705 ILCS 405/2-18 (West 2012); *Arthur H.*, 212 Ill. 2d at 462. If the court finds that the minor is abused or neglected, then it shall conduct a dispositional hearing to determine whether to make the minor a ward of the court. 705 ILCS 405/2-21(2) (West 2012). If the minor is made a ward of the court, then the court shall enter a disposition order which best serves the health, safety, and interests of the minor. 705 ILCS 405/2-22(1) (West 2012). Possible dispositions include continued custody with the minor's parents and restoration of custody to one or both parents. 705 ILCS 405/2-23(1)(a) (West 2012).

¶ 22    In this case, the court did not conduct an adjudicatory hearing or make a determination as to whether Ashli was abused and did not conduct a dispositional hearing or enter a dispositional order. The court only found that there was probable cause to believe that Ashli was abused and then conducted a temporary custody hearing and issued a temporary custody order placing Ashli in the custody of DCFS. The court later amended the temporary custody order to place Ashli in Scott's custody, but never found that Ashli was abused or made Ashli a ward of the court.

¶ 23 Although Scott maintains that the Juvenile Court Act and the case law do not prohibit a court from granting permanent custody to a parent prior to adjudication and disposition, neither the Juvenile Court Act nor the case law authorizes a court to do so. Rather, the Juvenile Court Act distinguishes between temporary and permanent custody by requiring a court to find that there is probable cause to believe that the minor is abused or neglected at a temporary custody hearing to advance matters to the next procedural stage (705 ILCS 405/2-10 (West 2012)) while requiring a court to find that the minor is abused or neglected to adjudicate the minor a ward of the court to advance proceedings to a dispositional hearing (705 ILCS 405/2-21 (West 2012)). If a court could enter a permanent custody order on the basis of a probable cause finding of abuse or neglect at a temporary custody hearing, then those portions of the Juvenile Court Act relating to adjudicatory and dispositional hearings would be superfluous, as a court could enter an order determining permanent custody without ever advancing to those later stages in the proceedings. Further, a court could grant permanent custody of a minor to one parent over the other or to a person who is not a parent without ever finding that the minor was actually abused or neglected. As statutory provisions must be construed in light of the statute as a whole, keeping in mind the subject it addresses and the legislature's intent (*In re M.I.*, 2013 IL 113776, ¶ 15), and so that no part of the statute is rendered meaningless or superfluous (*In re Detention of Stanbridge*, 2012 IL 112337, ¶ 70), we determine that the court could not have entered a permanent custody order at this stage in the proceedings.

¶ 24 In reaching that determination, we have considered *In re C.L.*, 384 Ill. App. 3d 689, 695-97 (2008), in which the appellate court held that the circuit court could close the juvenile court proceedings as to two minors without making the minors wards of the court, but then could not designate the father the legal guardian, enter orders as to the parents' fitness, or enter a visitation order after the case had been closed. Although this court affirmed the circuit court's decision to close the case prior to making the minors wards of the court, it did so in light of the ongoing divorce proceedings between the minors' parents and the understanding that parental issues would be addressed by the divorce court. *Id.* at 695-96. In this case, there are no ongoing divorce proceedings in which matters of custody and parenting will be resolved. Also, in vacating the orders as to guardianship, fitness, and visitation, this court stated that dispositional orders "such as visitation orders, findings of unfitness, and determinations of guardianship are statutorily predicated upon the court first making the minors wards of the court." *Id.* at 697. Thus, the reasoning in *C.L.* supports our determination that the court in this case could not have entered a permanent custody order at this stage in the proceedings.

¶ 25 CONCLUSION

¶ 26 Accordingly, we vacate the circuit court's order dismissing the petition of adjudication of wardship and closing the proceedings and remand the matter to the court for further proceedings consistent with the Juvenile Court Act.

¶ 27        Order vacated; cause remanded.