JUSTICE LYTTON delivered the judgment of the court, with opinion.
*417 *618 ¶ 1 Respondents, Jeremy K. and Keoka Y.E., appeal the circuit court's finding that K.E.-K. was a neglected minor, arguing that such a finding was against the manifest weight of the evidence. Jeremy also appeals the finding that he was unfit. We affirm.
¶ 2 FACTS
¶ 3 In October 2017, the Department of Children and Family Services (DCFS) filed a petition alleging that K.E.-K. was neglected in that his environment was injurious to his welfare. The petition alleged: (1) the mother (Keoka) was found unfit in three cases for her other children in June 2015 and had not subsequently been found fit, (2) Keoka's parental rights were terminated as to the other children in July 2016, (3) K.E.-K. was born exposed to cannabis on September 30, 2017, (4) Keoka had been previously ordered to complete drug treatment, which she reported completing in 2013 or 2014, (5) the father (Jeremy) had a criminal history including disorderly conduct (2006), DUI (2006), criminal trespass to property (2008), residential burglary (2009), criminal damage to property (2009), and aggravated battery (2013), (6) Jeremy had a pending 2016 unlawful possession of a weapon by a felon charge, and (7) Keoka had cut a woman with a knife in May 2015. Jeremy filed a voluntary acknowledgement of paternity and answered the petition, stipulating to the portions regarding his criminal record and pending criminal matters, but stating that he did not have sufficient knowledge to admit or deny any other portions of the petition, without demanding strict proof. Keoka stated that she did not have sufficient knowledge regarding Jeremy's criminal history or pending matters, but stipulated to the rest of the petition.
¶ 4 The dispositional report and integrated assessment stated that Keoka was unemployed and was living with her cousin. When K.E.-K. was born, both Keoka and K.E.-K. tested positive for Tetrahydrocannabinol (THC, the active chemical in cannabis). Keoka used cannabis daily from 2005 until her home was raided for drugs in 2012, but later began using cannabis again. Keoka complied with DCFS for her previous children and obtained fitness, but her fitness was revoked during her second unsupervised visit with her children in May 2015 when she stabbed her paramour in front of her children. She reportedly had asked one of her children to retrieve the knife from the residence and "smacked" him when he refused. After that she ceased cooperating, and her rights were terminated. She also had a history of domestic violence in her other relationships. Keoka stated that she had no intention of engaging in services to get K.E.-K. back and thought that it was in the best interest of her child for guardianship to be placed with her aunt. It was recommended that she participate in substance abuse treatment, parent coaching, domestic violence services, and individual psychotherapy.
¶ 5 The report further stated that Jeremy was arrested on November 8, 2017, and was in jail awaiting trial at the time. Jeremy stated that he had previously been incarcerated from 2009 to 2011 and from 2013 to 2015. The report stated that he presented as manic and anxious, showed signs of tangential and disorganized thinking, and was being transferred to a mental *418 *619 health facility to be assessed for fitness to stand trial. It was recommended that he participate in a substance abuse assessment/treatment and individual trauma-informed psychotherapy.
¶ 6 An adjudicatory hearing was held on January 9, 2018. The court noted that both Keoka and Jeremy stipulated to their portions of the petition and did not require strict proof as to the others. The State provided an offer of proof, stating that if called to do so, it would present certified copies of the record from the other case in which Keoka was found unfit and had her rights terminated. The State would further call a DCFS investigator who would testify that Keoka had been ordered to complete drug treatment for cannabis and had reported completing such treatment in 2013 and 2014. Even after the treatment K.E.-K. tested positive for cannabinoids at birth. The State would admit certified copies of medical records showing that K.E.-K.'s umbilical cord sample tested positive for cannabinoids.
¶ 7 The State would also call a Peoria police officer who would testify that Keoka got into a physical altercation with another woman. Keoka then went into her apartment to retrieve a knife, swung the knife twice at the woman, and struck her on the second attempt. Keoka threw the knife in a dumpster where it was recovered by the police. The State would further ask the court to take judicial notice of Jeremy's criminal history. The parties agreed with the proffer, but Keoka noted that she was not charged criminally for the knife incident and stated that she was acting in self-defense.
¶ 8 Keoka argued that there were no allegations directly relating to K.E.-K., that her previous unfitness findings were older, that cannabis was not a controlled substance and was not per se neglect, and that the knife incident happened before the birth of the minor. The court found the minor neglected based on an injurious environment "in light of the mother's prior finding of unfitness, and the fathers' criminal record, as well as the possible exposure to illegal drugs."
¶ 9 A dispositional hearing was held immediately after. Keoka indicated that she had recently obtained employment and that she had previously completed individual counseling, substance abuse treatment, and a parenting class. Jeremy noted that he had never been found unfit, did not have a history of domestic violence, had stopped smoking cannabis, and used alcohol infrequently. He also noted that he was currently incarcerated on charges, not a conviction. The State recommended that the minor be made a ward of the court, DCFS be made guardian, and both parents be found unfit. The guardian ad litem and caseworker agreed. The court stated:
"I've considered the * * * dispositional report; as well as the integrated assessment for both parents that were attached to the report; the information provided by the mother here; as well as the arguments of the parties. The Court will find that it's in the child's best interest to make it a ward of the Court and make * * * DCFS the guardian with the right * * * to place. * * *
* * * [F]irst, I'll find the mother is unwilling based upon her statements to the agency. I'll also find her unfit for a combination of reasons, including her prior finding of unfitness, her lack of desire, her apparent [un]willingness to cooperate with further services. The integrated assessment is in conflict with her testimony here in court today, which she said she successfully completed the counseling and other services. The integrated assessment says that she didn't. As a matter of fact, counseling, she says that she didn't find it particularly useful *419 *620 and was-understands that she didn't successfully complete it. So that undermines the mom's credibility to some degree or at least her testimony here in court. I think it's fair to say that she's unfit at this point in time, not that she couldn't become fit in the future.
* * * [W]ith regard to the father, the Court will also find him unfit based upon his criminal history. Court also has concerns about his mental health status based upon the integrated assessment as well as the allegation in the petition that was stipulated to that he's * * * asked for a fitness evaluation in his criminal case; raises some issues as to his ability to parent and his fitness to parent. Court would also note his behaviors while here in court. He's continually talking with his attorney in a somewhat disruptive fashion, and it's not a proper courtroom decorum or behavior, which would suggest that he has some difficulties maintaining his behavior as well, which would be consistent with the integrated assessment."
¶ 10 ANALYSIS
¶ 11 On appeal, Keoka and Jeremy both argue that the court erred in finding K.E.-K. neglected. Further, Jeremy argues that the court erred in finding him unfit. First, based on Keoka's previous termination of parental rights, which showed a history of domestic violence, substance abuse, and disregard for her children, her continued use of cannabis including while pregnant with K.E.-K., the fact that she stabbed her paramour with a knife, and Jeremy's extensive criminal history, we find that it was not against the manifest weight of the evidence to find K.E.-K. neglected based on an injurious environment. Second, we find the court's determination that Jeremy was unfit was not against the manifest weight of the evidence where he had a history of criminality and the dispositional report and integrated assessment noted concerns about his mental health.
¶ 12 I. Neglect
¶ 13 Under the Juvenile Court Act of 1987 (Act), a child is neglected if the child's environment is injurious to his or her welfare. 705 ILCS 405/2-3(1)(b) (West 2016). The term "injurious environment" is an amorphous concept. In re A.P. , 2012 IL 113875, ¶ 22, 367 Ill.Dec. 11, 981 N.E.2d 336. A circuit court's finding of neglect will not be disturbed unless the finding is against the manifest weight of the evidence. In re Arthur H. , 212 Ill. 2d 441, 464, 289 Ill.Dec. 238, 819 N.E.2d 734 (2004). A circuit court's finding is against the manifest weight of the evidence only if "the opposite conclusion is clearly evident [citation] or the determination is unreasonable, arbitrary, or not based on the evidence presented." In re D.F. , 201 Ill. 2d 476, 498, 268 Ill.Dec. 7, 777 N.E.2d 930 (2002).
¶ 14 Here, the evidence established that (1) Keoka's other children had been under DCFS guardianship and could not be returned home to her, (2) the basis of the juvenile petition for K.E.-K.'s siblings included a history of domestic violence and substance abuse by Keoka, (3) though Keoka had twice completed substance abuse treatment, she continued to use cannabis, (4) K.E.-K. was born with cannabis in his umbilical cord, (5) Jeremy had a significant criminal history, and (6) Keoka stabbed a woman, who was her paramour, with a knife in front of her other children. Looking at the totality of the circumstances, it was not unreasonable to find the minor neglected.
¶ 15 Respondents argue (1) the neglect of the other children was not conclusive evidence that this child was neglected, (2) the cannabis in the umbilical cord did not establish that the minor was neglected, (3)
*420 *621 Jeremy's criminal history was too remote to show an injurious environment, and (4) Keoka's knife incident predated K.E.-K.'s birth, and therefore, did not show the minor was neglected.
¶ 16 We reject each of these arguments. First, though neglect of one child does not conclusively establish the neglect of another ( Arthur H. , 212 Ill. 2d at 468, 289 Ill.Dec. 238, 819 N.E.2d 734 ), "proof of the abuse, neglect or dependency of one minor shall be admissible evidence on the issue of the abuse, neglect or dependency of any other minor for whom the respondent is responsible." 705 ILCS 405/2-18(3) (West 2016). The reasons for the neglect finding and the ultimate termination of Keoka's parental rights, including domestic violence, substance abuse, and the unwillingness to cooperate in services, were relevant to the minor's neglect proceedings. Second, "[a]lthough isolated incidents of a parent's drug usage do not necessarily pose a danger to a child [citation], obviously an ongoing pattern of substantial abuse can create an injurious environment." In re Z.Z. , 312 Ill. App. 3d 800, 805, 245 Ill.Dec. 220, 727 N.E.2d 667 (2000). Keoka had twice completed substance abuse treatment, yet continued to use cannabis, including when pregnant with K.E.-K. This shows an ongoing pattern of substance abuse. Third, Jeremy's criminal history shows that he was only out of prison for short periods of time before committing another offense. Though not all of the offenses were violent, his ongoing commitment to criminality helps establish an injurious environment. Fourth, though the knife incident predated the birth of K.E.-K., it happened in front of the other children and it was Keoka's paramour that she stabbed, thus showing domestic violence.
¶ 17 II. Jeremy's Unfitness
¶ 18 Under section 2-21(2) of the Act, after a minor is adjudicated abused, neglected, or dependent, the circuit court must hold a dispositional hearing. 705 ILCS 405/2-21(2) (West 2016). At such hearing, the circuit court determines whether the parents of a minor are "unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents." 705 ILCS 405/2-27(1) (West 2016). We review the circuit court's finding of parental unfitness based on the manifest weight of the evidence standard. In re A.S.B. , 293 Ill. App. 3d 836, 843, 228 Ill.Dec. 238, 688 N.E.2d 1215 (1997).
¶ 19 Here, Jeremy's numerous convictions, some violent and some not violent, established a pattern of criminal activity. Moreover, Jeremy was in jail while awaiting trial in another case. Though he points out that he is presumed innocent of that charge, he is still unable to care for his child while incarcerated. The dispositional report and integrated assessment noted concerns with his mental health, stating that he presented as manic and anxious, showed signs of tangential and disorganized thinking, and was being transferred to a mental health facility to be assessed for fitness to stand trial. The court noted that Jeremy's in-court behaviors matched the observations noted in the report. Considering Jeremy's criminal record and mental health concerns, it was not against the manifest weight of the evidence to find him unfit.
¶ 20 In coming to this conclusion, we reject Jeremy's argument that there is no evidence that he has an intellectual disability or developmental disability as would be considered as grounds for unfitness under the Adoption Act ( 750 ILCS 50/1(D)(p)
*421 *622 (West 2016) ). As Jeremy was only found dispositionally unfit at this stage, the Adoption Act was not yet at issue in this case. Moreover, Jeremy argues that his anticipated fitness evaluation in his pending criminal case should have no bearing on his fitness in this case. Even accepting this, the mental health observations in the dispositional report that were corroborated by the court's observations, in addition to Jeremy's criminal history, were enough to find Jeremy unfit.
¶ 21 Finally, we note that Jeremy's issue statement says, "The court's finding that Respondent is unfit and, subsequently, that the minor should be made a ward of the court, is against the manifest weight of the evidence." First, Jeremy does not actually make any arguments regarding the wardship finding; instead, his entire argument concerns the unfitness finding. Points not argued are forfeited. People v. Newbern , 276 Ill. App. 3d 623, 629, 213 Ill.Dec. 376, 659 N.E.2d 6 (1995) ; Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). Second, the wardship finding is actually made before the fitness finding.
"[T]hough the court considers many of the same factors when considering wardship or fitness, the actual fitness finding is made after the wardship finding. * * * In fact, a court may not make a fitness finding at a dispositional hearing regarding either parent unless the child is made a ward of the court. See [ In re C.L. , 384 Ill. App. 3d 689, 697, 323 Ill.Dec. 923, 894 N.E.2d 949 (2008) ]; In re M.M. , 2016 IL 119932, ¶ 19 n.1 [410 Ill.Dec. 874, 72 N.E.3d 260]. Though the court, when making the wardship determination, considers the specific parent's capability to care for the child, as it does when considering the parent's fitness, the wardship determination is based on the best interest to the child when considering the totality of the circumstances surrounding the child's life. See 705 ILCS 405/2-22(1) (West 2016)." (Emphasis in original.) In re D.S. , 2018 IL App (3d) 170319, ¶ 15, 419 Ill.Dec. 813, 94 N.E.3d 1227.
Third, considering the totality of the circumstances as set out above, including, inter alia , Keoka's reported unwillingness to cooperate with services, substance abuse issues, and lack of desire to parent K.E.-K., in conjunction with Jeremy's current incarceration, history of criminal behavior, and mental health concerns, we cannot say that it was against the manifest weight of the evidence for the court to find that it was in the best interest of K.E.-K. to be made a ward of the court.
¶ 22 CONCLUSION
¶ 23 The judgment of the circuit court of Peoria County is affirmed.
¶ 24 Affirmed.
Justices Holdridge and Schmidt concurred in the judgment and opinion.