# Illinois Official Reports

## Appellate Court

---

### *In re D.S.*, 2018 IL App (3d) 170319

---

| | |
|---|---|
| Appellate Court Caption | *In re* D.S., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Daniel S., Respondent-Appellant). |
| | |
| District & No. | Third District<br>Docket No. 3-17-0319 |
| | |
| Rule 23 order filed | January 23, 2018 |
| Motion to publish | |
| allowed | February 14, 2018 |
| Opinion filed | February 14, 2018 |
| | |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 17-JA-49; the Hon. Katherine S. Gorman Hubler, Judge, presiding. |
| | |
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | Christopher Frericks, of Peoria, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, Lawrence M. Bauer, and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Louise M. Natonek, of Peoria, guardian *ad litem*. |

| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion. |
| | Presiding Justice Carter and Justice McDade concurred in the judgment and opinion. |

**OPINION**

¶ 1       After a dispositional hearing, respondent, Daniel S., appeals, arguing that it was against the manifest weight of the evidence for the court to take wardship of D.S. Respondent also alleges the court abused its discretion in naming the Department of Children and Family Services (DCFS) guardian. We affirm.

¶ 2                                 FACTS

¶ 3       Respondent is the father of D.S. On February 28, 2017, DCFS filed a petition alleging D.S. was a neglected minor in that her environment was injurious to her welfare. The petition stated that on December 14, 2016, D.S.'s mother, Chiquita J., had left D.S.'s siblings in the care of their 14-year-old sibling while she left the state. On December 15, 2016, DCFS contacted Chiquita, who stated that she would return on December 16, 2016. Chiquita did not return on that day and was uncooperative. A petition had previously been filed alleging that D.S.'s siblings were neglected, which did not name respondent and is not the subject of this appeal. The petition further included the criminal history of Chiquita and respondent. The petition listed respondent's criminal history as:

> " '09 Battery; '09 Domestic Battery; '11 Illegal Possess/ Consume Liquor Public Way; '14 Domestic Battery; '14 Criminal Trespass to Land; '15 Resisting Police; '17 Criminal Trespass to Land; '17 Illegal Possess/ Consume Liquor Public Way; and is pending '17 Theft (Felony) (2 Counts); and '17 Financial Transaction and Fraud-Use Forged and Possession of Burglary or Theft Tools."

The petition further proposed that an order of protection be entered, which would read:

> "Minor to reside with father, [respondent], and all contact between minor and mother shall be supervised by agency. Mother shall not enter the minor's home. Father shall use no illegal substances or alcohol. Father shall submit to random drop testing or [B]reathalyzer at least two (2) times per month which DCFS shall set up and inform State's Attorney's Office of all missed and positive drops. All caretakers shall have prior DCFS approval."

¶ 4       On March 6, 2017, the respondent was served in court and presented a voluntary acknowledgement of paternity. The court granted the order of protection contained in the petition. Respondent filed an answer to the petition on March 15, 2017, stating that he lacked sufficient knowledge regarding the allegations of the petition, but did not demand strict proof.

¶ 5       An adjudicatory hearing was held on March 29, 2017. The State presented a detailed proffer regarding the allegations in the petition, including respondent's criminal history, stating that the pending 2017 felony theft was now a conviction for misdemeanor theft. Respondent only disputed the 2017 charge for financial transaction and fraud-use forged and possession of burglary or theft tools that was pending in Minnesota, stating that he did not

believe that was him. The court found the petition proven by a preponderance of the evidence, except for the pending Minnesota charge against respondent. The court further found that respondent did not contribute to the injurious environment.

¶ 6    On April 19, 2017, the court held a dispositional hearing. Respondent testified that, other than the 2017 conviction for illegal possession and consumption of liquor on a public way, he had not recently abused alcohol or illegal substances.

¶ 7    The dispositional report stated that D.S. was born on February 22, 2017, and lived with respondent in an apartment along with respondent's brother. Respondent was unemployed and cared for D.S. full time, took D.S. to all her appointments, and cooperated with the caseworker regarding the assessment and visitation. Respondent's mother helped babysit if necessary. The report stated that Chiquita "reported that she and [respondent] have a good relationship. She plans to continue the relationship, but stressed they do not live together. She expressed concern regarding the current DCFS involvement and stated that they will not live together so, if necessary, he can retain custody of [D.S.] at birth." However, respondent stated "that he and [Chiquita] are 'ok', but he does not talk to her except for a little bit at court and visits when he is dropping [D.S.] off."

¶ 8    A police report showed that respondent and Chiquita were arrested together on January 25, 2017, for credit card fraud and possession of stolen property. They told the police officers that they were dating and living together.

¶ 9    The State recommended (1) D.S. be made a ward of the court, (2) DCFS be appointed guardian of D.S., and (3) Chiquita be found unfit. As to respondent, the State stated, "I'd ask that you find him fit, but I think that's [a] very—close call. We have criminality here also. Certainly not to the same *** extent." Respondent asked that D.S. not be made a ward of the court, and that he be found fit and made the guardian of D.S. The guardian *ad litem* asked that D.S. be made a ward of the court, DCFS be appointed guardian, and that both Chiquita and respondent be found unfit.

¶ 10    The court made D.S. a ward of the court, appointed DCFS as guardian, found Chiquita unfit, found respondent fit, and allowed D.S. to remain with respondent. Further, the court ordered respondent to participate in the services outlined in the dispositional report, including that respondent submit to two drug and alcohol drops a month, all visitation with Chiquita be supervised, and Chiquita not enter the minor's home.

¶ 11                                    ANALYSIS

¶ 12    On appeal, respondent argues (1) it was against the manifest weight of the evidence for the court to take wardship of D.S. and (2) the court abused its discretion in appointing DCFS guardian of D.S. Based on the record, which shows, in part, that respondent and Chiquita had a lengthy history of criminal conduct, including joint arrests in 2017, we cannot say that it was against the manifest weight of the evidence for the court to take wardship of D.S. Moreover, because of respondent's criminal history and poor choices when Chiquita was involved, the court did not abuse its discretion in appointing DCFS guardian.

¶ 13    Under the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-21(2) (West 2016)), the court must hold a dispositional hearing after it determines that a child is neglected.

> "At this hearing, the court must first determine whether the minor is to be made a ward of the court. [Citation.] Only after a finding that the minor should be made a ward of the

court can the court issue a dispositional order affecting the future conduct of the parents. [Citation.] Likewise, the court's consideration of the need for guardianship and whether a parent is dispositionally unfit must be preceded by the court's finding that it is in the best interest of the minor to become a ward of the court. [Citation.]" *In re C.L.*, 384 Ill. App. 3d 689, 693 (2008) (citing 705 ILCS 405/2-22(1), 2-23(1), 2-27(1)(a) (West 2006)).

The "paramount consideration" at a dispositional hearing is the best interest of the child. (Internal quotation marks omitted.) *In re N.B.*, 191 Ill. 2d 338, 343 (2000). On review, we determine whether the court's wardship determination was against the manifest weight of the evidence. See *In re April C.*, 326 Ill. App. 3d 245, 257 (2001). "A finding is against the manifest weight of the evidence where a review of the record clearly demonstrates that the result opposite to that reached by the trial court was the proper result." *Id.*

¶ 14    Here, the evidence at the dispositional hearing showed that at the beginning of January 2017, respondent and Chiquita were dating, living together, and expecting D.S., their first child together. At the end of January, they were arrested together for credit card fraud and possession of stolen property. Before D.S. was born on February 22, 2017, respondent had already received convictions in 2017 for criminal trespass to land and illegal possession/consumption of liquor on a public way in addition to pending charges for theft. In addition, both he and Chiquita had a significant criminal history. When interviewed for the dispositional report, Chiquita stated that she and respondent were continuing their relationship. Further, Chiquita had left her other children alone while she left the state. Though respondent cooperated with the caseworker, kept D.S. in good health, and cared for her, we cannot say that it was against the manifest weight of the evidence for the court to take wardship of D.S.

¶ 15    In coming to this conclusion, we note that respondent places significant weight on the fact that the court found him fit. However, we note that, though the court considers many of the same factors when considering wardship or fitness, the actual fitness finding is made *after* the wardship finding. See *supra* ¶ 13. In fact, a court may not make a fitness finding at a dispositional hearing regarding either parent unless the child is made a ward of the court. See *C.L.*, 384 Ill. App. 3d at 697; *In re M.M.*, 2016 IL 119932, ¶ 19 n.1. Though the court, when making the wardship determination, considers the specific parent's capability to care for the child, as it does when considering the parent's fitness, the wardship determination is based on the best interest to the child when considering the totality of the circumstances surrounding the child's life. See 705 ILCS 405/2-22(1) (West 2016). This is seen here where the record shows that the court weighed the evidence regarding respondent's capability of caring for D.S. with his and Chiquita's criminal history and history together. Therefore, the court's subsequent fitness finding is not dispositive on the question of whether wardship was properly taken.

¶ 16    Similarly, respondent appears to use his dissatisfaction with the dispositional order requiring him to perform two alcohol/drug tests a month and prohibiting unsupervised visits between Chiquita and D.S. as a reason why wardship should not have been taken by the court. Specifically, respondent states, "Because the trial Court did not explain the need for the protective order or urinalysis testing and there is little, if any evidence, in the record to support either 'intervention,' the finding that wardship was in D.S.'s best interest was against the manifest weight of the evidence." Again, the court's decision to order the parties to participate in services or cooperate with certain requirements is created *after* the finding of wardship.

*Supra* ¶ 13. Therefore, the court's subsequent decision to order the parties to engage in such has no bearing on the wardship finding.

¶ 17 Once a minor is made a ward of the court at a dispositional hearing, the court must determine the proper disposition. 705 ILCS 405/2-22(1) (West 2016). The overriding concern is the best interest of the child. *In re M.P.*, 408 Ill. App. 3d 1070, 1073 (2011). "On review, a trial court's dispositional determination will be reversed only if the court abused its discretion by selecting an inappropriate dispositional order. [Citation.] A trial court abuses its discretion when no reasonable person would agree with its decision." *Id.* "[O]ur courts have recognized that the trial court can generally split the guardianship and custody of a minor." *In re E.L.*, 353 Ill. App. 3d 894, 898 (2004); see also *M.P.*, 408 Ill. App. 3d at 1074.

¶ 18 After reviewing the record, we conclude that the court did not abuse its discretion in granting DCFS guardianship of D.S., while respondent retained custody. As stated above, the court found respondent fit, cooperative with DCFS, and caring for D.S. and her medical needs. However, respondent had a significant criminal history, including three convictions at the beginning of 2017. Two of his convictions, including one in 2017, were for illegal possession and consumption of liquor. Moreover, respondent and Chiquita had engaged in criminal activity together, showing that perhaps respondent did not make the best decisions when Chiquita was involved. Significantly, during her interview for the dispositional report, Chiquita stated that she and respondent still maintained a relationship. We cannot say that no reasonable person would agree with the court's decision to grant DCFS guardianship.

¶ 19 CONCLUSION

¶ 20 For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

¶ 21 Affirmed.