**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 210031-U

Order filed October 13, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* N.J.M., a Minor | ) | Appeal from the Circuit Court |
| | ) | of the 9th Judicial Circuit |
| (The People of the State of Illinois, | ) | Knox County, Illinois |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-21-0031 |
| | ) | |
| v. | ) | Circuit No.  20-JA-52 |
| | ) | |
| Timothy M., | ) | Honorable |
| | ) | Curtis S. Lane, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Presiding Justice McDade and Justice Holdridge concurred in the judgment.
_____

**ORDER**

¶ 1       *Held*:  Trial court's dispositional order declaring 18-month-old minor a ward of the
                court, finding father unfit, and granting custody and guardianship of minor to the
                Department of Children and Family Services (DCFS) was not against the
                manifest weight of the evidence where father had criminal convictions,
                was charged with violating probation, had no relationship with minor, and did
                not visit minor while he was in DCFS custody.

¶ 2       Respondent Timothy M. is the father of N.J.M. In September 2020, when N.J.M. was 15

months old, the State filed a petition alleging N.J.M. was neglected in that his environment was

injurious to his welfare. At the adjudicatory hearing, the trial court found N.J.M. neglected. At the

dispositional hearing, the trial court entered an order making N.J.M. a ward of the court, finding respondent unfit, and granting DCFS guardianship and custody of N.J.M. Respondent appeals from the dispositional order. We affirm.

¶ 3                                                    BACKGROUND

¶ 4        N.J.M. was born on June 9, 2019. L.C. is N.J.M.'s mother, and respondent is N.J.M.'s father. On September 26, 2020, DCFS took custody of N.J.M. Three days later, the State filed a petition alleging N.J.M. was neglected in that his environment was injurious to his welfare. The petition alleged, in part, that N.J.M. was neglected because (1) L.C. was previously found unfit and her fitness had not been restored, (2) L.C. "gets into screaming matches" with [N.J.M.] and "shows poor communication habits" with him, (3) respondent had two felony charges of "possession of meth making materials," and (4) respondent was arrested in March 2020 for violation of probation.

¶ 5        On the same day, a shelter care hearing was held. L.C. and respondent were both present. Kelli Morland, a DCFS employee, testified that she contacted respondent by phone on September 28, 2020. During that conversation, respondent stated he wanted N.J.M. placed with him. Morland did not place N.J.M. with respondent because he was arrested six months earlier for violation of his probation. The trial court entered an order finding that placement outside respondent's home was in N.J.M.'s best interest because of respondent's felony convictions and his March 2020 arrest for a probation violation. The court ordered N.J.M. to be placed in the guardianship and custody of DCFS.

¶ 6        At the next hearing, on October 20, 2020, respondent failed to appear. Respondent's counsel appeared and said she had not heard from respondent. At the admit/deny hearing set for November 17, 2020, respondent and his counsel were present. Respondent had not yet met with

2

his counsel, so the hearing was postponed. A pretrial conference was held on December 10, 2020. Respondent and his counsel were both present. Following the hearing, the trial court entered an adjudicatory order finding N.J.M. neglected by both L.C. and respondent.

¶ 7 On December 31, 2020, the dispositional hearing was held. The trial court accepted into evidence the dispositional report prepared by N.J.M.'s caseworker, Allysa Franqui. According to Franqui, L.C. was N.J.M.'s "primary caregiver" before DCFS took custody. Respondent told Franqui he wanted guardianship of N.J.M.

¶ 8 The court took judicial notice of court records showing that respondent pled guilty in June 2016 and January 2017 to separate charges of "unlawful possession of meth manufacturing materials." The court also took judicial notice of a petition to revoke probation the State filed against respondent on March 10, 2020, alleging that he tested positive for methamphetamine and amphetamine on January 20, 2020.

¶ 9 Franqui testified that she had little communication with respondent. She was unable to contact respondent by phone because two phone numbers she was given for him had been disconnected. As a result, Franqui was unable to schedule drug testing of respondent or visits between respondent and N.J.M. According to Franqui, respondent had no contact with N.J.M. since he was taken into DCFS custody. Franqui testified that she had not been to respondent's home to determine if it was appropriate for a child. Franqui observed one room of respondent's home when she participated in a video chat with respondent. Franqui testified that the room she observed appeared appropriate but said she needed to see respondent's entire home in person before allowing visitation to take place there.

¶ 10 Respondent is engaged in substance abuse treatment. Franqui spoke to respondent's substance abuse counselor, who said all of respondent's drug drops have been negative for illegal

substances. Respondent had not yet signed a release allowing Franqui access to his substance abuse treatment records, so Franqui did not know how long respondent had been receiving substance abuse treatment, how long he had been subjected to drug testing, or how many drug tests he had taken. Franqui knew that respondent's substance abuse treatment was not complete.

¶ 11    In its oral ruling, the trial court expressed concern that respondent still had "a drug issue" based on his positive drug test in January 2020. The court also found that respondent did not show a "reasonable degree of *** interest" in N.J.M. because respondent "hasn't had any visits with the child." The trial court issued a dispositional order (1) finding it was "consistent with the health, welfare and safety of [N.J.M.] and in the best interest of [N.J.M.] to make [N.J.M.] a ward of this Court," (2) declaring respondent unfit because of his "pending probation" and "lack of reasonable degree of *** interest in [N.J.M.]," and (3) granting DCFS custody and guardianship of N.J.M.

¶ 12                                    ANALYSIS

¶ 13    Respondent argues that the trial court erred in (1) making N.J.M. a ward of the court, (2) declaring him unfit, and (3) granting guardianship and custody of N.J.M. to DCFS.

¶ 14    Following an adjudication of neglect, the court holds a dispositional hearing to determine if it is in the best interest of the minor to be made a ward of the court. 705 ILCS 405/2-22(1) (West 2020); *In re M.M.*, 2016 IL 119932, ¶ 17. If the minor is declared a ward of the court, the court must then determine what disposition best serves "the health, safety, and interests of the minor and the public." 705 ILCS 405/2-22(1) (West 2020); *M.M.*, 2016 IL 119932, ¶ 18.

¶ 15    If the court determines that the minor's parents are "unfit or unable *** to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents, the court may *** commit the minor to the Department of Children and Family Services for care and

4

service." 705 ILCS 405/2-27(1)(d) (West 2020). A parent is unfit if he fails "to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare." 750 ILCS 50/1(D)(b) (West 2020).

¶ 16      The most important consideration at a dispositional hearing is the best interest of the child. *In re D.S.*, 2018 IL App (3d) 170319, ¶ 13. A trial court's dispositional order will not be reversed on appeal unless its factual findings are against the manifest weight of the evidence or the court abused its discretion by selecting an inappropriate dispositional order. *In re A.S.*, 2014 IL App (3d) 130163, ¶ 21. "A determination will be found to be against the manifest weight of the evidence only if the opposite conclusion is clearly evident [citation] or the determination is unreasonable, arbitrary, or not based on the evidence presented [citation]." *In re D.F.*, 201 Ill. 2d 476, 498 (2002). "An abuse of discretion occurs when no reasonable person would take the view adopted by the trial court." *In re Marriage of Roberts*, 2015 Il App (3d) 140263, ¶ 13.

¶ 17      In deciding it was in the best interest of N.J.M. to make him a ward of the court, the trial court considered information contained in the dispositional report as well as testimony given at the adjudicatory and dispositional hearings. This evidence revealed that L.C. was N.J.M.'s primary and sole caregiver. No testimony or evidence was presented that respondent ever took care or responsibility of N.J.M. or had any relationship with him. Respondent expressed a desire to obtain guardianship of N.J.M. to Morland and Franqui; however, during the three months N.J.M. was in DCFS custody, respondent failed to (1) schedule or participate in visitation with N.J.M., (2) regularly communicate with his counsel or Franqui, (3) schedule or participate in drug testing, (4) sign a release allowing Franqui access to his substance abuse treatment records, (5) schedule a home visit with Franqui, (6) provide Franqui with updated contact information for him, or (7) perform any other act demonstrating his desire and/or ability to care for N.J.M. Furthermore,

respondent's criminal history included convictions for possession of meth making materials in 2016 and 2017, and a March 2020 arrest for violation of probation because of a positive drug test. Based on the evidence, the trial court's determination that it was in N.J.M.'s best interest to be made a ward of the court was not against the manifest weight of the evidence.

¶ 18    Next, respondent argues that the trial court erred in finding him unfit. He contends that his two convictions for possession of meth making materials, which preceded N.J.M.'s birth, and the probation violation charge, which was the result of a positive drug test 11 months earlier, did not render him unfit. We need not determine if respondent's criminal history alone was sufficient to support the trial court's unfitness finding because the trial court did not base its finding solely on respondent's criminal history. Rather, the trial court found that respondent's positive drug test in January suggested that respondent still had a "drug issue." Furthermore, respondent did not sign a release allowing Franqui to access his substance abuse treatment records to determine respondent's progress in substance abuse treatment. Franqui only knew that respondent's treatment was not yet complete. Thus, at the time of the hearing, there were legitimate concerns about whether respondent still had an ongoing drug problem. Additionally, the court found respondent failed to show a reasonable degree of interest in N.J.M., as evidenced by respondent's failure to visit N.J.M. In addition to respondent's lack of visitation with N.J.M., respondent did almost nothing during the three months N.J.M. was in DCFS custody to show he was interested in N.J.M.'s wellbeing. The evidence supported the trial court's finding that respondent was unfit based on his criminal history, drug use and failure to maintain a reasonable degree of interest in N.J.M.'s welfare.

¶ 19    Finally, respondent argues that the trial court erred in granting guardianship and custody of N.J.M. to DCFS. He contends that the court should have granted him guardianship, custody, or both. We disagree. Based on the evidence presented, respondent had no relationship with N.J.M.,

6

who was only 18 months old at the time of the dispositional hearing. During the three months N.J.M. was in DCFS custody, respondent failed to make even minimal efforts to begin building a relationship with N.J.M. Given this evidence, along with respondent's criminal history and drug use, the trial court did not err in finding N.J.M.'s best interest would be jeopardized if respondent were granted guardianship and/or custody of N.J.M. The trial court's order granting guardianship and custody to DCFS was not against the manifest weight of the evidence or an abuse of discretion.

¶ 20                                    CONCLUSION

¶ 21        The judgment of the circuit court of Knox County is affirmed.

¶ 22        Affirmed.