**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190369-U

Order filed February 21, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* B.S. and A.S., | ) | Appeal from the Circuit Court |
| Minors, | ) | of the 10th Judicial Circuit, |
| | ) | Peoria County, Illinois. |
| (The People of the State of Illinois, | ) | |
| | ) | Appeal Nos.  3-19-0369 |
| Petitioner-Appellee, | ) |      3-19-0370 |
| | ) | Circuit Nos.  18-JA-416 |
| v. | ) |      18-JA-417 |
| | ) | |
| Brett S., | ) | The Honorable |
| | ) | David A. Brown |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE LYTTON delivered the judgment of the court.
Justices McDade and Wright concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  Trial court's finding of unfitness against father was not against the manifest weight of the evidence where father was involved in multiple incidents of domestic violence with minors' mother, had not completed domestic violence classes, missed many drug drops, did not obtain suitable housing, and remained unemployed.

¶ 2    In November 2018, the State filed petitions alleging that B.S., a two-year-old boy, and A.S., a three-year-old girl, were neglected in that their environment was injurious to their welfare after police were called to their home for a domestic dispute involving their mother, Heather M.,

and father, Brett S. The petitions alleged that Brett abused alcohol and cocaine, had a history of domestic violence and had a criminal history. Following hearings, the trial court found the minors neglected and Brett unfit based on the allegations contained in the petition, particularly domestic violence. Brett appeals the trial court's unfitness finding. We affirm.

¶ 3                                    BACKGROUND

¶ 4        A.S. was born on June 28, 2015. B.S. was born on August 16, 2016. Tests performed shortly after birth showed that B.S. was exposed to cocaine. Two days after each child's birth, Brett signed an "Illinois Voluntary Acknowledgement of Paternity," stating that he is their biological father.

¶ 5        On November 22, 2018, the Peoria Police Department was called for a domestic disturbance involving Brett and Heather. On arrival, police found Heather with blood and scrapes on her face and injuries to her leg. Brett was arrested, and Heather was taken to the hospital.

¶ 6        On November 27, 2018 the State filed petitions alleging that B.S. and A.S. were neglected minors in that their environment was injurious to their welfare because (1) B.S. was born exposed to cocaine; (2) Heather "has/ had a substance abuse problem including cocaine and alcohol;" (3) Brett "has/ had a substance abuse problem including cocaine and alcohol;" (4) Heather and Brett have a history of domestic violence as evidenced by incidents on November 22, 2018, and February 19, 2018; (5) on November 22, 2018, employees of the Illinois Department of Children and Family Services (DCFS) "observed the minors' home to be in disarray with empty beer cans and liquor bottles throughout with several items broken in the home including a door;" and (6) Brett had a criminal history that included a 2006 conviction for possession of cannabis and a 1996 adjudication of delinquency for burglary.

2

¶ 7    Brett filed a response to the petitions, denying that he ever had a substance abuse problem or a history of domestic violence. He stated that he drank three beers on November 22, 2018. He stipulated that the State could call witnesses to establish that his home was in disarray on November 22, 2018, but explained that "he had just thrown a party for Thanksgiving and was in the process of cleaning up the mess." He stipulated that the State could call witnesses to establish that he had a criminal history, including a conviction for possession of cannabis and an adjudication of delinquency for burglary.

¶ 8    Paternity testing completed in December 2018 and January 2019, established that Charles K., not Brett, is the biological father of B.S. and A.S. Brett expressed his willingness to remain the minors' legal father.

¶ 9    According to an integrated assessment completed in February 2019, Brett has been unemployed since September 2018. He receives no income. His father financially supports him, and he helps care for his father, who is partially paralyzed from a stroke. Brett reported that he has been intermittently employed in construction for the past few years. According to the assessment, "domestic violence and substance abuse problems (marijuana and suspected alcohol) impede [Brett]'s ability to assure [A.S.] and [B.S.]'s safety and well-being needs."

¶ 10    On April 16, 2009, the trial court held an adjudication hearing. The State presented hospital records showing that B.S. tested positive for cocaine shortly after his birth. According to the State, Peoria Police Officer Shannon Walden reported to a domestic dispute between Brett and Heather on February 19, 2018. Brett reported that Heather threw things around the house and at him, grabbed a steak knife and slashed a tire on his vehicle. DCFS employee Jessica Flora observed the minors' home on November 22, 2018, "to be in disarray with empty beer cans throughout and with several items broken in the home, including a door."

3

¶ 11 Brian Richards, a Peoria police officer, testified that dispatch received a call from a neighbor shortly after 5:00 a.m. on November 22, 2018, about "a male and female fighting out in the front yard." When Richards arrived on the scene, he could hear a male and female arguing inside the house. Richards knocked on the door, and Heather opened it while lying on the floor. She had blood and scrapes on her face and "appeared to be very intoxicated." She complained that her left leg was hurting, and Richards observed that her leg was "turned at a very outward angle." Heather told Richards that she and Brett had been drinking and doing cocaine together and that Brett pulled her off the porch and down the stairs.

¶ 12 Brett testified that he was at home with his father, Heather, A.S., and B.S. on November 22, 2018. He said Heather punched him in the face twice, so he pushed her away, and "she went flying off the steps and landed and injured herself." A.S. and B.S. were sleeping when Heather was injured. A.S. woke up when Brett brought Heather inside the house. Brett stated that he drank three beers in the three hours prior to the incident.

¶ 13 Because of Heather's injuries and her statements to police, Brett was arrested. The State later dismissed the charges against him. Brett denied ever using cocaine and denied ever seeing Heather use cocaine.

¶ 14 At the adjudication hearing, Heather agreed that she punched Brett twice in the face on November 22, 2018, so he shoved her. She denied telling Richards that she or Brett had used cocaine. She denied ever seeing Brett use cocaine and denied that Brett regularly abused alcohol.

¶ 15 The trial court entered an order finding B.S. and A.S. neglected based on the "CONTENTS OF PETITION, PLEADINGS ON FILE, ARGUMENTS OF COUNSEL, EVIDENCE AT TRIAL-SUBSTANCE ABUSE, DOMESTIC VIOLENCE" and B.S. being "BORN SUBSTANCE EXPOSED." The court found that the State's petition was proven by a

4

preponderance of the evidence but that the State did not prove that Brett "has/ had a substance abuse problem including cocaine and alcohol."

¶ 16     On May 1, 2019, the minors' caseworker, Sarah Salisbury, completed a service plan report. Salisbury reported that Brett made unsatisfactory progress in his bi-monthly drug drops from December 2018 to May 2019, because he (1) tested positive for marijuana at his first drop, (2) did not appear for his next four drops from December 2018 to early February 2019, and (3) failed to appear for two drops in March and April 2019. Brett also made unsatisfactory progress in maintaining stable, appropriate housing because he continued to reside with his father, along with Heather and Charles, which Salisbury found to be "inappropriate due to the relationship dynamics between all parties." Salisbury also concluded that Brett made "unsatisfactory progress" in mental health treatment, individual counseling, and domestic violence treatment because he had been referred for services but had not yet begun them.

¶ 17     On May 24, 2019, a dispositional hearing report was prepared by Salisbury. According to that report, Brett was living with his father, Heather and Charles until May 13, 2019. On that date, Brett told Charles and Heather to move out after an altercation. Brett later allowed Heather to return to the home. Salisbury expressed concerns about Brett's "ability to set healthy boundaries in his relationships, both romantic and otherwise." Brett was referred for counseling services and assigned a counselor at Lutheran Social Services, Inc. (LSSI).

¶ 18     Brett visits A.S. and B.S. weekly and exhibits appropriate parenting behaviors during his visits. However, Salisbury thought Brett did not understand what is developmentally appropriate for the children or "how to augment their development in his interactions with them." Salisbury recommended parent coaching to take place during his visits with the children. Brett successfully completed a parenting class in March 2019.

¶ 19 According to Salisbury, Brett "report[ed] a significant history of domestic violence, particularly in his relationship with [Heather]." Brett's integrated assessment suggested that he "minimizes the extent of the domestic violence that has occurred and his own role in these incidents." Brett "also reports limited understanding of how witnessing domestic violence can impact the emotional development of his children." Charles reported to Salisbury that Brett and Heather were involved in a domestic dispute on May 13, 2019, during which they hit each other. Brett was recommended to participate in a domestic violence perpetrator's group.

¶ 20 Salisbury recommended that DCFS remain guardian of B.S. and A.S. and that Brett do the following: (1) maintain communication with LSSI and comply with the recommendations of his service plan, (2) inform LSSI of any changes in address or phone number within three business days, (3) maintain stable housing and a legal source of income, (4) participate in individual counseling, (5) participate in parent coaching services, (6) complete at least two random drug drops per month, (7) complete a substance abuse evaluation and follow all treatment recommendations, and (8) participate in and successfully complete domestic violence services as a perpetrator.

¶ 21 On May 28, 2019, a dispositional hearing was held. At the hearing, Salisbury opined that Brett did not meet minimum parenting standards because he failed to complete recommended services, specifically those related to domestic violence. The State and the minors' guardian *ad litem* asked that Brett be found unfit.

¶ 22 Brett testified that he called the police on May 13, 2019, because Heather started a fight with him and refused to leave his father's house. He said Heather threw clothes at him and broke a door, but he remained calm. Brett said he now lives with his grandmother, and Heather lives with his father. He said he missed drug drops because he had no "transportation" but reported that he now has reliable transportation. Brett testified that he last used marijuana and alcohol "[l]ast year."

6

He said he moved into his grandmother's house two months earlier but never reported his change of address to Salisbury.

¶ 23       The trial court entered a dispositional order finding Brett unfit based on the "CONTENTS OF PETITION, INCLUDING DOMESTIC VIOLENCE". The court ordered Brett to (1) participate in and successfully complete counseling, parent coaching services and a domestic violence perpetrator course; (2) "obtain and maintain stable housing conducive to the safe and healthy rearing of Respondent Minor(s)"; (3) "[u]se best efforts to obtain/maintain legal source of income;" and (4) complete a mental health assessment and follow all recommendations.

¶ 24                                            ANALYSIS

¶ 25       Under the Juvenile Court Act of 1987 (Act), after a minor is adjudicated abused, neglected, or dependent, the trial court must hold a dispositional hearing to "determine whether it is consistent with the health, safety and best interest of the minor and the public that he be made a ward of the court." 705 ILCS 405/2-21(2) (West 2018). At the dispositional hearing, the court determines whether the parents of the minor are "unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents." 705 ILCS 405/2-27(1) (West 2018). We reverse a trial court's finding of parental unfitness only if it is against the manifest weight of the evidence. *In re K.E.-K.*, 2018 IL App (3d) 180026, ¶ 18.

¶ 26       Here, Brett has a long history of domestic violence with Heather. Police were called to their residence at least three times during the 15-month period of February 2018 to May 2019. Just two weeks before the dispositional hearing, Brett and Heather were involved in an altercation that resulted in Brett calling the police. Charles reported that Heather and Brett hit each other during

that altercation. Brett has not yet completed mental health treatment, counseling or domestic violence classes to address his domestic-violence issues. Additionally, Brett has not been successful in his court-mandated drug testing. He tested positive for marijuana at his first drop and failed to show for more than half of the drops.

¶ 27 Furthermore, Brett has not maintained housing that would be suitable for the minors. A few weeks before the dispositional hearing, Brett reported that he was living in his father's house, along with Heather and Charles, which is "inappropriate due to the relationship dynamics between all parties." At the dispositional hearing, Brett stated that he had been living at his grandmother's house for the last two months, but he failed to notify Salisbury of his change of address even though he was ordered to do so. Finally, Brett is unemployed and unable to financially support himself or the minors. For all of these reasons, the trial court's determination that Brett is unfit is not against the manifest weight of the evidence.

¶ 28 CONCLUSION

¶ 29 The judgment of the circuit court of Peoria County is affirmed.

¶ 30 Affirmed.